# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JOHN H. BALSEWICZ, *also known as* MELISSA BALSEWICZ,<br><br>      Plaintiff,<br><br>v.<br><br>JAMIE MOUNGEY, JONATHAN S. PAWLYK, BRIAN FOSTER, STEVEN WIEMENGA, ANTHONY P. MELI, JEREMY L. WESTRA, CAPT. RYMARKIEWITZ, SANCHEZ, MATTHEW BURNS, C.O. NICHOLAS, LISA STOFFLE, MYKALA WADE, MITCHELL BILLIE, SEAN BRYAN, LEIGHA WEBER, and YANA PUISCH,<br><br>      Defendants. | Case No. 21-CV-746-JPS<br><br><br>**ORDER** |

  Plaintiff John H. Balsewicz is a transgender prisoner also known as Melissa Balsewicz. Plaintiff is currently incarcerated at Kettle Moraine Correctional Institution. On June 29, 2020, Plaintiff filed a pro se complaint in the Western District of Wisconsin under 42 U.S.C. § 1983 alleging that Defendants violated her constitutional rights. (Docket #1). On June 17, 2021, the case was transferred from the Western District of Wisconsin to this Court. (Docket #20, #21). This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens her complaint.

1. **MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

  The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when she filed her complaint. *See* 28 U.S.C.

§ 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with her case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). She must then pay the balance of the $350 filing fee over time, through deductions from her prisoner account. *Id.*

On June 29, 2020, the Western District of Wisconsin ordered Plaintiff to pay an initial partial filing fee of $26.13. (Docket #8). Plaintiff paid that fee on July 8, 2020. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. (Docket #2). She must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

2.    **SCREENING THE COMPLAINT**

   2.1    **Federal Screening Standard**

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim

for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived her of a right secured by the Constitution or the laws of the United States and that whoever deprived her of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff is a male-to-female transgender prisoner. On January 18, 2018, Plaintiff filed a § 1983 suit in this Court, alleging that prison officials at Waupun Correctional Institution ("Waupun") violated her constitutional rights by failing to protect her against an assault by a fellow inmate. *Balsewicz v. Pawlyk*, 963 F.3d 650, 653 (7th Cir. 2020), *as amended* (July 2, 2020). Plaintiff filed the suit against Sergeant Jonathan S. Pawlyk ("Sgt. Pawlyk"), Captain Robert J. Rymarkiewitz ("Capt. Rymarkiewitz"), Captain Jeremy L. Westra ("Capt. Westra"), and Security Director Anthony P. Meli. ("Meli").[1] *Id.* This Court granted summary judgment to Defendants,

---

[1] Plaintiff also brought the case against Tonia Moon, Patrick A. Mahoney, and a John Doe, but the Court terminated these parties from the case in its screening order. Case No. 18-CV-97, Docket #17.

but the Seventh Circuit reversed that order and remanded the case. *Id.* Ultimately, the parties entered into a settlement agreement, and the case was dismissed. Case No. 18-CV-97, Docket #77, #78. Plaintiff now alleges that Defendants have been retaliating against her because of her 2018 lawsuit and because of her reports about the following allegations. (Docket #1 at 4).

It appears that both during and after Plaintiff's 2018 lawsuit, Plaintiff filed reports of staff misconduct against her at Waupun; she also states that prison officials intentionally mishandled these complaints. (*Id.*) For example, Plaintiff alleges that, on December 28, 2018, Sgt. Pawlyk peered over bathroom stall dividers to watch Plaintiff shower. (*Id.* at 4–5). Plaintiff, believing Pawlyk's actions to be a violation of the Prison Rape Elimination Act's ("PREA") prohibition on "voyeurism," reported Sgt. Pawlyk's actions to Correctional Officer Nicholas ("C.O. Nicholas"). (*Id.* at 5). Plaintiff also asked C.O. Nicholas to report the allegation to a supervisor and to preserve any existing video footage of the event. (*Id.*) But, according to Plaintiff, C.O. Nicholas "absolutely refused to do so, claiming that she did not witness anything." (*Id.*) Plaintiff then contacted the PREA investigator, Capt. Rymarkiewitz, and requested that he preserve any existing video footage. (*Id.*) Capt. Rymarkiewitz reportedly told Plaintiff, "I don't believe you!" and refused to take any action or pursue investigating the incident. (*Id.*) Plaintiff also called the PREA hotline, but it seems that nothing came of this call. (*Id.*) Plaintiff states that Meli, Deputy Warden Steven Wiemenga ("Deputy Warden Wiemenga"), and Warden Brian Foster ("Warden Foster") "may have destroyed such video [evidence]" of the voyeurism incident with Sgt. Pawlyk. (*Id.* at 4).

On January 2, 2019, Plaintiff filed a formal inmate complaint about the voyeurism incident. (*Id.* at 5). Warden Foster forwarded this complaint to the Institution Complaint Examiner, Tonia Moon ("ICE Moon"). (*Id.*) ICE Moon returned the complaint to Plaintiff "without processing it." (*Id.*) Plaintiff felt as though she was being given the "runaround treatment" by those responsible for processing inmate complaints, including Meli, Deputy Warden Wiemenga, Warden Foster, PREA Director Leigha Weber ("Weber"), and PREA Compliance Manager Yana Puisch ("Puisch"). (*Id.* at 5–6). No investigation was conducted. (*Id.*) On January 3, 2019, Plaintiff informed her assigned clinician, Gale Griffith ("Griffith") about all of the above; Griffith filed an incident report. (*Id.* at 6).

Plaintiff's next alleged retaliatory incident occurred when Sergeant Jamie Moungey ("Sgt. Moungey") (formally, Jamie Goodman)[2] began sexually harassing Plaintiff. (*Id.* at 5–6). For example, on January 20, 2019, Sgt. Moungey shouted the following at Plaintiff while she walked up the stairs: "Don't trip and fall down the stairs being you're so upset and can't walk up them; or better yet don't fall on a dick because after all we all know that's what you really want to do!" (*Id.* at 13). Sgt. Moungey also made comments about how much Plaintiff "irritated her." (*Id.*) Plaintiff states that Sgt. Moungey directed other staff to administer Plaintiff's medications "as slow[ly] as possible" and that she also shouted at Plaintiff that she "act[s]

---

[2]Plaintiff filed a motion requesting the Court's blanket permission for Plaintiff to submit amended complaints as she discovers the full and/or proper legal names of various defendants. (Docket #9). At this juncture, the Court will deny the motion. Plaintiff may simply inform the Court as she discovers the full and/or proper legal names of various defendants. To the extent that this motion requests leave for Plaintiff to proceed in forma pauperis, the Court will deny it as moot. *See supra* Section 1.

like an old kitchen lady or lunch lady who needs to get [her] tampon checked." (*Id.*) Plaintiff states that she never reacted negatively to Sgt. Moungey's comments and behavior. (*Id.*)

Plaintiff states that she told C.O. Mykala Wade ("C.O. Wade") about Sgt. Moungey's comments and behavior but that she refused to document them. (*Id.* at 8). Plaintiff reports the same refusal by C.O.s Mitchell Billie and Lisa Stoffle ("C.O. Billie" and "C.O. Stoffle," respectively). (*Id.*) Plaintiff states that no guard would vouch for her account of Sgt. Moungey's behavior, despite many of them being present for it. (*Id.*) Plaintiff later told Griffith that C.O. Matthew Burns ("C.O. Burns"), C.O. Billie, C.O. Wade, C.O. Stoffle, and C.O. Sean Bryan ("C.O. Bryan") had all denied Plaintiff a PREA call. (*Id.* at 6).

That evening, after Plaintiff had spent the day attempting to convince other C.O.s to document Sgt. Moungey's comments and behavior, C.O. Burns relocated Plaintiff to segregation, citing Plaintiff's "[disobedience], disrespect, [and] disruptive conduct." (*Id.* at 8). C.O. Burns stated that Sgt. Moungey had issued a conduct report as to Plaintiff. (*Id.*) Plaintiff explained to C.O. Burns that she felt that she was being retaliated against. (*Id.*) She noted that she had been trying to complain about Sgt. Moungey all day, but that C.O. Burns only responded once Sgt. Moungey told her side of the story. (*Id.*)

Plaintiff received a copy of Sgt. Moungey's incident report, which Plaintiff alleges was "entirely fabricated." (*Id.* at 9). In the report, Sgt. Moungey states that Plaintiff had approached her aggressively, called her stupid, and yelled profanities at her. (*Id.*) Plaintiff states that no other staff member has corroborated the story as told by Sgt. Moungey. (*Id.*) Plaintiff notes that, while Sgt. Moungey stated that Plaintiff could have been written

Page 6 of 13
Case 2:21-cv-00746-JPS    Filed 03/07/22    Page 6 of 13    Document 26

up days before, Sgt. Moungey only wrote up Plaintiff once Plaintiff attempted to lodge complaints about Sgt. Moungey. (*Id.*) ("The only difference by the 2nd day . . . was [Plaintiff's] attempts to have Moungey investigated under PREA."). Thereafter, Plaintiff submitted a formal complaint about Sgt. Moungey, but, again, ICE Moon returned the complaint without investigation.[3] (*Id.* at 5). Plaintiff reported all of this to Griffith, who again recited the details in a report. (*Id.* at 6).

Plaintiff states that Sgt. Moungey and her husband, a former correction officer, have a history and reputation of treating transgender inmates poorly. (*Id.*) It appears that Sgt. Moungey's husband had been fired only a week prior to these incidents because of his repeated pattern of disrespecting inmates and becoming the subject of multiple civil suits. (*Id.*) Finally, Plaintiff writes that Sgt. Moungey damaged the new television in Plaintiff's cell. (*Id.* at 10).

On February 6, 2019, Capt. Westra, the disciplinary hearing officer, conducted a disciplinary hearing with Plaintiff concerning Sgt. Moungey's conduct report on Plaintiff. (*Id.*) He did not allow Plaintiff to submit her complaints about Sgt. Moungey into evidence for the hearing. (*Id.*) Plaintiff notes that her civil case against Capt. Westra was pending at this time and, thus, Capt. Westra was not impartial when he ruled against Plaintiff. (*Id.*) Plaintiff appealed to Warden Foster, who affirmed Capt. Westra's decision. (*Id.*) Plaintiff believes that Capt. Westra and Warden Foster were personally interested in retaliating against Plaintiff because of Plaintiff's 2018 lawsuit and because of her complaints against prison guards.

---

[3] Plaintiff maintains that ICE Moon "has never decided [Plaintiff's] retaliation complaints." (Docket #1 at 5). Plaintiff believes this is because ICE Moon was trying to protect other guards from Plaintiff's complaints. (*Id.*)

## 2.3 Analysis

### 2.3.1 PREA

First, to the extent that Plaintiff attempts to bring any stand-alone claims under PREA (e.g., that Sgt. Pawlyk violated PREA by watching Plaintiff shower or that various defendants violated PREA by failing to investigate and file the required reports), "[c]ourts considering the issue have agreed that PREA does not support a private cause of action." *Jordan v. Lashbrook*, No. 19-CV-00305-NJR, 2019 WL 1282327, at *2, *4, (S.D. Ill. Mar. 20, 2019) (dismissing a plaintiff's PREA claim where the plaintiff pleaded that "[the] [d]efendants . . . fail[ed] to timely and adequate investigate [the] [p]laintiff's claims of sexual assault") (citing *Truly v. Moore*, No. 16-CV-783-NJR, 2017 WL 661507, at *4 (S.D. Ill. Feb. 17, 2017)).

### 2.3.2 Retaliation

Plaintiff attempts to bring retaliation claims against all of the defendants. Plaintiff cites Defendants' animus toward her after the 2018 lawsuit, as well as for the prison complaints she lodged, as described above. Essentially, Plaintiff maintains that prison officials retaliate against her every time she makes a report, leading to a never-ending cycle of complaint-retaliation-complaint-retaliation.

The filing of a complaint, grievance, or lawsuit by a prisoner is activity protected under the First Amendment. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). "A prisoner has a First Amendment right to make grievances about conditions of confinement." *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). To state a First Amendment retaliation claim, a plaintiff must allege that "(1) [s]he engaged in activity protected by the First Amendment; (2) [s]he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity

was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Additionally, "an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper." *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) (quoting *Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir. 1978)).

In light of the lenient pleading standard required at the screening stage, the Court will allow Plaintiff to proceed on a claim of First Amendment retaliation against Sgt. Moungey, Sgt. Pawlyk, Warden Foster, Deputy Warden Wiemenga, Meli, Capt. Westra, Capt. Rymarkiewitz, C.O. Burns, C.O. Nicholas, C.O. Stoffle, C.O. Billie, Weber, and Puisch. Likely, Plaintiff will face an uphill battle when it comes time to prove her claims—the complaint often fails to draw clear lines linking Plaintiff's protected activity (i.e., filing a lawsuit and prisoner complaints) with some of these defendants' actions. However, at this stage, Plaintiff has alleged enough for the Court to draw reasonable inferences between the conduct and the harm. Defendants ignored Plaintiff's complaints and pursued disciplinary actions against Plaintiff shortly after she filed her complaints; many of these defendants were named in Plaintiff's 2018 lawsuit or in Plaintiff's inmate complaints, and the others were those defendants' colleagues. Further many of the defendants whom Plaintiff asked to file reports refused to, citing their lack of personal knowledge of the complained-of event or their disbelief in Plaintiff, despite Plaintiff alleging that they did, in fact, have firsthand knowledge of the events underlying Plaintiff's prisoner complaints.

The Court will not allow Plaintiff to pursue a claim of retaliation against Captain Sanchez ("Capt. Sanchez"). Plaintiff's allegations demonstrate very limited involvement by Capt. Sanchez. (Docket #1 at 7). Based on the single-sentence allegation provided by Plaintiff, it appears that Capt. Sanchez only became involved in this matter after he was directed to conduct an investigation on February 28, 2019. Plaintiff does not allege (nor does she provide any statements that would allow the Court to draw an interference) that Capt. Sanchez acted (or failed to act earlier) out of retaliatory animus.[4]

3. **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claim pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Retaliation, in violation of the First Amendment, by Defendants Sgt. Moungey, Sgt. Pawlyk, Warden Foster, Deputy Warden Wiemenga, Meli, Capt. Westra, Capt. Rymarkiewitz, C.O. Burns, C.O. Nicholas, C.O. Stoffle, C.O. Billie, Weber, and Puisch.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting her case.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises

---

[4] Plaintiff also writes that C.O.s Wade and Bryan are named for "informational purposes" and "not as Defendants." (Docket #1 at 8). Accordingly, the Court will dismiss them as defendants.

all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee (Docket #2) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to amend and for leave to proceed in forma pauperis (Docket #9) be and the same is hereby **DENIED in part** as to Plaintiff's request for leave to amend and **DENIED in part as moot** as to Plaintiff's request for leave to proceed in forma pauperis;

**IT IS FURTHER ORDERED** that Defendants C.O. Wade, C.O. Bryan, and Capt. Sanchez be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants Sgt. Moungey, Sgt. Pawlyk, Warden Foster, Deputy Warden Wiemenga, Meli, Capt. Westra, Capt. Rymarkiewitz, C.O. Burns, C.O. Nicholas, C.O. Stoffle, C.O. Billie, Weber, and Puisch;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the complaint within 60 days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from her institution trust account the $323.87 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with her remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 7th day of March, 2022.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Prisoners who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.