UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**JOHN H. BALSEWICZ**, *also known as*
**MELISSA BALSEWICZ,**

    Plaintiff,

    v.                                Case No. 21-CV-746

**JAMIE MOUNGEY,** *et al.***,**

    Defendants.

---

**DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Melissa Balsewicz[1], who is incarcerated and representing herself, brings this lawsuit under 42 U.S.C. § 1983. (ECF No. 1.) Balsewicz was allowed to proceed on a First Amendment retaliation claim against defendants Sgt. Jamie Moungey, Sgt. Jonathan Pawlyk, Warden Brian Foster, Deputy Warden Steven Wierenga, Anthony Meli, Captain Jeremy Westra, Captain Robert Rymarkiewicz, C.O. Matthew Burns, C.O. Samantha Nicholas (n/k/a Samantha Rynes), C.O. Mitchell Billie, Leigha Weber, and Yana Puisch. On April 21, 2022, the defendants filed a motion for partial summary judgment, stating that as to defendants Foster,

---

[1] Plaintiff is a male-to-female transgender prisoner. Her preferred pronouns are she/her, and her preferred name is Melissa.

Wierenga, Pawlyk, Meli, Rymarkiewicz, Nicholas, Weber, and Puisch, Balsewicz failed to exhaust her administrative remedies. (ECF No. 32.)

On May 18, 2022, Balsewicz filed a motion to amend her complaint, seeking to add an Eighth Amendment claim against Moungey and Pawlyk. (ECF No. 48.) She also sought to add claims against Tonia Moon, James Muenchow, and Nicholas Sanchez for failing to properly investigate her inmate grievances. (*Id.*) Additionally, she voluntarily dismissed Foster and Wierenga. (*Id.*)

On June 29, 2022, the court screened Balsewicz's amended complaint. (ECF No. 54). The court allowed her to proceed on an Eighth Amendment claim against Moungey and Pawlyk but did not allow her to proceed on claims against Moon, Muenchow, and Sanchez. (*Id.*) The court also dismissed Foster and Wierenga from the case. (*Id.*) Additionally, the court gave the defendants an opportunity to file a supplemental brief in support of their motion for summary judgment in light of the amended complaint and new claims. The defendants did not file a supplemental brief.

The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 25, 30.) The motion is fully briefed and ready for a decision.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

2

"Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available

3

are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court and produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

*Relevant Procedure for Exhausting Administrative Remedies*

The Inmate Complaint Review System (ICRS) is the main process a prisoner must use to bring a grievance to the attention of the institution. Wis. Admin Code § DOC 310.04. A prisoner must file a complaint regarding whatever issue he wishes to raise within 14 calendar days of the conduct giving rise to the complaint occurring. Wis. Admin. Code § DOC 310.07(2). The complaint must clearly identify the issue the inmate seeks to complain about. Wis. Admin. Code § DOC 310.07(5).

Once a prisoner files a complaint, the institution complaint examiner (ICE) may either accept, reject, or return the complaint. Wis. Admin. Code § DOC 310.10(2). A complaint may be returned within 10 days of receipt if it fails to meet filing requirements, including failing to address only one clearly identified issue. Wis. Admin. Code § DOC 310.07(5); § DOC 310.10(5). If a complaint is returned, a

4

prisoner has 10 days to correct and resubmit it. Wis. Admin. Code § DOC 310.10(5). The ICE may reject the complaint for several reasons, including if the prisoner does not provide sufficient information to support it or where the issue has already been addressed though the ICRS. Wis. Admin. Code § DOC 310.10(6).

Once the complaint examiner accepts the complaint, the complaint examiner makes a recommendation to the reviewing authority. Wis. Admin. Code § DOC 310.10(12). The reviewing authority has 15 days after receiving the recommendation to either affirm or dismiss the complaint in whole or in part. Wis. Admin. Code § DOC 310.11(1)-(2). Within 14 days after the date of the reviewing authority's decision, an inmate may appeal the reviewing authority's decision to the Corrections Complaint Examiner (CCE). Wis. Admin. Code § DOC 310.12(1). Appeals may not exceed 500 words and may not exceed two pages. Wis. Admin. Code § DOC 310.09(2)(e).

The CCE then has 45 days to make a recommendation to the Secretary of the DOC or to notify the inmate that more time is needed. Wis. Admin. Code § DOC 310.12(9). The CCE "may recommend rejection of an appeal not filed in accordance with § DOC 310.09." Wis. Admin. Code. § DOC 310.12(5). The Secretary then has 45 days to make a decision following receipt of the CCE's recommendation. Wis. Admin. Code § DOC 310.13(1). If an inmate does not receive a decision from the Secretary within 90 days of receipt of the appeal in the CCE's office, he may consider his administrative remedies exhausted. Wis. Admin. Code § DOC 310.13(4).

5

*Balsewicz's Claims*

At all times relevant Balsewicz was incarcerated at Waupun Correctional Institution (WCI). Balsewicz was allowed to proceed on First Amendment retaliation claims against all the defendants because she alleged they engaged in various acts in retaliation for filing a lawsuit against them in 2018 and using the ICRS. Specifically, Balsewicz alleges that on December 28, 2018, Pawlyk watched her while she showered in order to sexually harass and retaliate against her for filing the 2018 lawsuit. (ECF No. 1 at 4.) When Balsewicz reported Pawlyk's actions to Nicholas and Rymarkiewicz, they refused to take any action, which Balsewicz asserts was also in retaliation. (*Id.* at 4-5.) Meli, Weber and Puisch also refused to take action when Balsewicz informed them of Pawlyk's behavior. (*Id.*)

On January 20, 2019, Moungey shouted sexually harassing things at Balsewicz. (ECF No. 1 at 5-6.) When Balsewicz told Burns, Billie, and Stoffel about Moungey's actions, they refused to report her. (*Id.* at 6-8.) Burns had Balsewicz taken to segregation for her complaints. (*Id.* at 8.) Moungey also gave Balsewicz a conduct report for attempting to report Moungey's behavior. (*Id.*)

On February 6, 2019, at the disciplinary hearing, Balsewicz asserts that Captain Westra was not impartial due to Balsewicz's 2018 lawsuit, in which he was a defendant. (ECF No. 1 at 10.)

*The Defendants' Version of Balsewicz's Complaint History*

On January 23, 2019, the ICE received inmate complaint number WCI-2019-1672. (ECF No. 35-3.) In that complaint Balsewicz asserted that Moungey retaliated

6

against her for attempting to verbally report her sexual harassment when she issued her a conduct report. (*Id.* at 16; ECF No. 34, ¶ 3.) The inmate complaint was dismissed because it dealt with the subject of a pending conduct report, which cannot be addressed through the ICRS while active. (ECF No. 35-3.)

On January 31, 2019, the ICE received inmate complaint number WCI-2019-2106, in which Balsewicz alleged that Pawlyk sexually harassed her by watching her shower, and that Nicholas, Foster, and Rymarkiewicz did not properly investigate her allegations when she informed them of Pawlyk's behavior. (ECF No. 35-2; ECF No. 34, ¶ 8.) WCI-2019-2106 does not mention that Balsewicz believed Pawlyk harassed her in the shower in retaliation for having filed the lawsuit earlier in 2018. (ECF No. 34, ¶ 9.) It also does not explicitly mention that Nicholas, Foster, and Rymarkiewicz refused to investigate her claims in retaliation. (*Id*, ¶¶ 9-10.) However, in her appeal of the dismissal of the complaint, Balsewicz noted that Rymarkiewicz did "nothing" because she was currently suing him. (ECF No. 35-2 at 11.) She also stated that, because she filed PREA complaints, "it is intentional and WCI staff are not investigating rather are allowing it as well as to retaliation after it. [*sic*]." (ECF No. 35-2 at 11.)

Also on January 31, 2019, the ICE received inmate complaint number WCI-2019-2471, in which Balsewicz alleged Moungey was harassing her during medication pass. (ECF No. 35-7 at 10.) Balsewicz also alleged that Billie and Stoffel refused to report or document Moungey's actions. (*Id.*) The complaint was dismissed because it concerned the subject of a pending conduct report. (*Id.* at 8.) In her

7

administrative appeal, Balsewicz mentioned "possible more retaliation" but did not provide details as to who she believed was retaliating against her or what they were doing to retaliate. (*Id*. at 14.)

On February 13, 2019, the ICE received complaint number WCI-2019-3103, in which Balsewicz alleged "WCI Staff Retaliation for use of ICRS." (ECF No. 35-5 at 8.) She also stated that Billie, Stoffel, and Burns refused to document her verbal complaint about Moungey's sexual harassment. (*Id*.) She further stated:

> WCI staff retaliation (in the forms of ignoring my sexual harassment complaint; construing my sexual harassment complaint as a complaint against conduct report and damage to my new TV and all occurring on same date as well as ICE Tonia Moon dismissing all my complaints on 2-11-19 while investigating nothing! Staff harming me, RHU, damaged property is "retaliation and my one issue!"

(*Id*.) This complaint was rejected because it sought to appeal the disposition of inmate complaint WCI-2019-2471. (*Id*. at 6.) Balsewicz was advised to appeal WCI-2019-2471 rather than file a new complaint on the matter. (*Id*.)

On March 1, 2019, the ICE received complaint number WCI-2019-4108, wherein Balsewicz complained that Meli, Westra, Burns, Stoffel, Billie, and Nicholas ignored her complaints about Moungey and did not conduct an investigation. (ECF No. 35-6 at 9.) The complaint was dismissed because it was determined that Balsewicz's complaints about Moungey were already being investigated under the Prison Rape Elimination Act (PREA) protocol. (*Id*. at 7.) In her appeal of the dismissal, Balsewicz indicated that the fact that "WDOC prison officials intentionally ignore all requirements in order for staff to protect staff" was retaliation. (*Id*. at 10.)

8

On March 11, 2019, the ICE received complaint number WCI-2019-4687, in which Balsewicz complained that Westra was biased at her disciplinary hearing because Balsewicz had filed the 2018 lawsuit in which Westra was a defendant. (ECF No. 35-4 at 11.; ECF No. 34, ¶ 4.) The complaint was dismissed because it discussed the subject matter of a pending conduct report. (ECF No. 35-4 at 7.)

*Balsewicz's' Version of Her Complaint History*

Balsewicz does not contest the substance or facts related to the six inmate complaints discussed above. However, she asserts that, in addition to these documented inmate complaints, she submitted several complaints to the ICRS that were not filed by the ICE. (ECF No. 53, ¶ 7.) But she does not provide any details about these inmate complaints, including when she allegedly submitted them, how she submitted them, or their subject matter.

Balsewicz does present evidence of an incident report drafted by her psychologist Gayle Griffith (who is not a defendant), which demonstrates that she reported to Griffith Moungey's sexual harassment and Stoffel's and Burns's refusal to allow her to call the PREA hotline. (ECF No. 42-1 at 6-7.) She also submitted evidence of a report filed by non-defendant Bailey Frame, a social worker, wherein she reported to Frame that she needed to be transferred because of retaliation by staff. (*Id.* at 9-10.)

On January 21, 2019, Balsewicz also wrote a statement in response to her placement in temporary lock up that, "per my lawsuit against WCI staff, my PREA

9

complaint against Sgt. Pawlyk, WCI staff are retaliating and putting me in a situation to miss my court deadline." (ECF No. 42-1.)

Balsewicz also includes evidence of several other inmate complaints she filed. In WCI-2019-1943, received on January 29, 2019, she complained that her new TV was damaged when it was placed in the temporary lock up property storage. (ECF No. 42-1 at 13.) She questioned whether the TV was damaged in retaliation for her having filed complaints. (*Id.*) In WCI-2019-3503, received on February 20, 2019, she protested the dismissal of her inmate complaint regarding the damaged TV and demanded reimbursement. (*Id.* at 15.)

Balsewicz also provides evidence of an inmate complaint, not numbered, dated March 16, 2020. (ECF No. 42-1 at 16.) In it she complained that she was being retaliated against by staff for filing a PREA complaint against Pawlyk and Moungey. (*Id.*) She stated that, after submitting her PREA complaint, she was issued a fabricated conduct report, taken to temporary lock up, and had her TV damaged. (*Id.*) She also complained that no one was taking her complaints seriously, no one was investigating them, and that they were being misconstrued. (*Id.*) According to the defendants, this complaint was dismissed because it violated Wis. Admin. Code § DOC 310.07(5) in that it did not contain only one clearly identified issue. (ECF No. 53, ¶ 13.) In her appeal of this complaint, she stated that "STAFF to date has consistently ignored all my retaliation complaints due to my PREA complaints." (ECF No. 42-1 at 17.)

10

In an unnumbered complaint signed on May 7, 2020, Balsewicz complained of retaliation by staff for her use of the ICRS. (ECF No. 42-1 at 20.) She specifically mentioned that Rymarkiewicz was failing to follow shower and bathroom policies. (*Id.*) She also complained that another (unnamed) staff member left an unattended knife in a work area. (*Id.*) She mentioned that staff was refusing to resolve or address her previous complaints, and that the refusal to investigate her complaints amounted to retaliation. (*Id.*) This complaint was returned because the ICE could not "discern what you are talking about" because it was unclear what issue Balsewicz wanted resolved. (*Id.* at 21.) Balsewicz asserts that she resubmitted the complaint and attempted to clarify the issues, but the ICE still rejected it. (ECF No. 53, ¶ 15.) It is unclear from the record the contents of the resubmitted complaint.

In an unnumbered complaint signed on May 19, 2020, in complaining about Dr. Griffith's inability to help with her depression, Balsewicz mentioned that she complained about "WCI staff either harassing and retaliating against me INCESSANTLY." (ECF No. 42-1 at 23.) The complaint was rejected because, pursuant to Wis. Admin. Code § 310.07(1), Balsewicz was required to attempt to resolve the issue informally with Dr. Van Buren, who oversaw Dr. Griffith. (*Id.* at 24.) Balsewicz asserts she wrote Dr. Van Buren and then resubmitted the complaint, but the ICE claimed not to have received it. (ECF No. 53, ¶ 16.) According to Balsewicz, the ICE had received her second submission but whited out the "date received" stamp to make it appear like Balsewicz did not send her resubmitted complaint. (*Id.*)

11

In an unnumbered complaint signed on May 29, 2020, Balsewicz complained that a sergeant in food services was "punishing me for complaints made against them to supervisors" and requested a "stop to all retaliations." (ECF No. 42-1 at 28.) This complaint was again rejected for failing to limit the complaint to one clearly identifiable issue. (*Id.* at 29.)

In an unnumbered complaint signed on May 30, 2020, Balsewicz asserted that other inmates' PREA complaints were not being properly investigated and that several staff members, including Rymarkiewicz, were allowing these inmates to shower with another prisoner who threatened them. (ECF No. 42-1 at 30.) She once again requested a stop to the retaliation. (*Id.*) The complaint was returned to Balsewicz with a letter explaining that she could fix the identified errors—specifically, by complaining about issues that affected her and not other prisoners. (*Id.* at 31.)

On June 11, 2020, the ICE received complaint number WCI-2020-10715, in which Balsewicz complained that the ICEs are refusing to file complaints that she timely submitted; requested that they locate and file all complaints she submitted; complained that ICE Tonia Moon (not a defendant) ignored her resubmitted inmate complaint after she wrote Dr. Van Buren; that ICEs were destroying her complaints; and threatening to file a lawsuit. (ECF No. 42-1 at 32.) The complaint was returned to her and she was told to choose either her complaint about complaints not being entered by the ICE office or her complaint that Moon was returning her submissions. (*Id.* at 33.)

12

The ICE received the resubmitted complaint on June 22. 2022, and rejected it because "it lacks merit or is frivolous." (ECF No. 42-1 at 34.) The ICE, J. Bovee (not a defendant), noted a record of Balsewicz submitting 33 inmate complaints, all properly filed and addressed. (*Id.*) Balsewicz requested a review of the rejection, not contesting that the rejection was improper but seeking to know why her resubmissions were not accepted. (*Id.* at 36-37.)

On June 15, 2020, the ICE received WCI-2020-10204, in which Balsewicz requested that staff stop punishing her. (ECF No. 42-1 at 38.) She described a due process hearing that took place on June 11, 2020, for a conduct report and protested the handling of the conduct report. (*Id.*) The complaint was dismissed because it appeared to be an appeal of a conduct report. (*Id.* at 39.) In her appeal of the dismissal Balsewicz stated, "My chief complaint was of retaliation and staff punishing me for complaints or prior use of ICRS." (*Id.* at 41.)

Balsewicz also introduces evidence of inmate complaints she filed on October 9, 2020, and November 3, 2020. Because she filed this lawsuit on June 29, 2020, before either of those complaints was filed, for purposes of determining whether she exhausted her administrative remedies prior to filing suit these complaints are irrelevant. (ECF No. 42-1 at 44-54.)

*Analysis*

Because the court has already dismissed defendants Brian Foster and Steven Wierenga (ECF No. 54), summary judgment as to them is denied as moot. Thus, the court must consider whether Balsewicz properly exhausted her administrative

13

remedies for her claims against the remaining movants--Pawlyk, Rymarkiewicz, Nicholas, Meli, Puisch, and Weber.

There is evidence that Balsewicz filed (or attempted to file) at least 14 inmate complaints that in some way related to her claim that she was being retaliated against or that her inmate complaints were not being addressed. However, the complaints oftentimes do not mention who she contends is responsible for specific instances of retaliation and instead complain generally that WCI staff is retaliating against her.

The main "purpose of the exhaustion requirement is to permit prison officials the opportunity to address inmate concerns internally before an inmate initiates litigation." *Bergen v. Wisconsin*, Case No. 20-CV-813, 2022 WL 3369540 at *4 (E.D. Wis. Aug 16, 2022) (citing *Woodford*, 548 U.S. at 89). A grievance adequately provides such an opportunity if "it 'alerts the prison to the nature of the wrong for which redress is sought.'" *Price v. Friedrich*, 15-CV-744, 2018 WL 3432725 at *4 (E.D. Wis. July 16, 2018) (quoting *Strong v. David*, 297 F.3d 646, 560 (7th Cir. 2002)). A prisoner "need not 'state facts, articulate legal theories, or demand particular relief,' nor must he name each potential defendant, so long as the grievance 'object[s] intelligibly to some asserted shortcoming.'" *Bergen* 2022 WL 3369540 at *5 (quoting *Strong*, 297 F.3d at 650; *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004)). In short, "a prisoner satisfies the exhaustion requirement when he gives a prison 'notice of, and an opportunity to correct, a problem.'" *Schillinger v.*

14

*Kiley*, 954 F.3d 990, 995-96 (7th Cir. 2020) (quoting *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013)).

The defendants concede that Balsewicz provided enough notice to WCI that Moungey, Westra, Burns, Stoffel, and Billie were retaliating against her, though they do not identify which inmate complaints provide that notice. There does not appear to be one specific inmate complaint that clearly establishes that Balsewicz was complaining that these defendants retaliated against her for filing the 2018 lawsuit and for using the ICRS system. The court must conclude, then, that some combination or aggregation of Balsewicz's inmate complaints sufficiently provided adequate notice to WCI against those defendants.[2]

The same cannot be said for defendants Meli, Puisch, and Weber. Even when considering Balsewicz's inmate complaints in the aggregate, no reasonable factfinder could conclude that her inmate complaints put WCI on notice that she believed these defendants were retaliating against her. None of her complaints mention Puisch or Weber, and while "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievance," *Jones*, 549 U.S. at 219, there is nothing in any of the inmate complaints suggesting the involvement of these individuals in any alleged retaliation.

Meli is mentioned in only one inmate complaint, WCI-2019-4108, and Balsewicz's complaint against him is that he did not investigate her verbal

---

[2] While the court need not take the time to discern which combination of complaints suffices, it raises this point because it informs the court's analysis as to the remaining defendants and explains why looking at Balsewicz's complaints in the aggregate, including those that were returned or rejected, is appropriate.

complaints about Moungey's sexual harassment. The inmate complaint does not suggest that his failure to investigate was in retaliation for something—either her complaining about Moungey, using the IRCS, filing the 2018 lawsuit, or engaging in any other protected activity. Nor is there anything in this inmate complaint or her other inmate complaints that would allow for an inference of retaliation by Meli. At best, Balsewicz's complaint against Meli is a general failure to investigate her complaints. But prisoners have no constitutional right to an investigation of their grievances. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007.) Thus, summary judgment on exhaustion grounds is granted in favor of Puisch, Weber, and Meli, and they are dismissed.

That leaves Pawlyk, Rymarkiewicz, and Nicholas. In WCI-2019-2106 Balsewicz stated that Nicholas and Rymarkiewicz refused to properly investigate her claims that Pawlyk was sexually harassing her by watching her shower. Later, in her appeal, she explicitly claims that Rymarkiewicz's refusals to do anything was because she was "currently suing him". (ECF No. 35-2 at 11.) She also stated that "WCI staff" was refusing to investigate her complaint because she filed a PREA complaint. (*Id.*) While there is some case law from other districts within the Seventh Circuit suggesting that appeals alone cannot satisfy the exhaustion requirement if the issue is raised for the first time in the appeal, *see e.g. Harris v. Iverson*, 16-cv-594, 2018 WL 1245736 at *4 (W.D. Wis. Mar. 9, 2018; *Lockett v. Cox*, 16-cv-601, 2018 WL 1108793 at *5 (W.D. Wis, Feb. 27, 2018), Balsewicz's appeal, in

16

the context of several other inmate complaints, is not the first time the issue of staff retaliation was raised.

When viewed in the context of Balsewicz's other complaints, the appeal is one piece of the larger picture that put WCI on notice that Balsewicz believed Rymarkiewicz and Nicholas refused to report or investigate her verbal complaints because she had filed prior lawsuits and had used the ICRS system. Rymarkiewicz is mentioned by name in at least two other inmate complaints (the unnumbered complaint dated May 7, 2020, and the unnumbered complaint dated May 20, 2020). Nicholas is mentioned by name in at least one other complaint, WCI-2019-4108. In most of Balsewicz's later complaints, where she explicitly mentions that WCI staff failed to investigate her claims that are the subject of the PREA complaint, it is clear she was referencing staff's failure to report and address Pawlyk's and Moungey's actions.

Thus, based on the aggregate of Balsewicz's many complaints, a reasonable factfinder could conclude that WCI was on notice that Rymarkiewicz and Nicholas were part of the WCI staff who refused to investigate her claims in retaliation for her having filed prior lawsuits and for the use of the IRCS. Summary judgment on exhaustion grounds is denied as to Rymarkiewicz and Nicholas.

However, even taking the complaints in the aggregate, there is nothing on the record to indicate that Pawlyk acted in retaliation. Thus, the court will grant summary judgment on exhaustion grounds as to the retaliation claim against Pawlyk. However, the court notes that, when it screened Balsewicz's amended

17

complaint, it allowed her to proceed on an Eighth Amendment claim against Pawlyk, so Pawlyk is not dismissed from the case.

## CONCLUSION

To summarize, summary judgment on exhaustion grounds is denied as moot as to Foster and Wierenga because they were previously dismissed from the case. Summary judgment is granted on exhaustion grounds as to Meli, Puisch, Weber, and Pawlyk. Meli, Puisch, and Weber are dismissed without prejudice.[3] Because an Eighth Amendment cruel and unusual punishment claim against Pawlyk remains, he is not dismissed. Summary judgment on exhaustion grounds is denied as to Rymarkiewicz and Nicholas. Thus, a First Amendment retaliation against Rymarkiewicz, Nicholas, Moungey, Westra, Burns, Stoffel, and Billie survives in addition to the Eighth Amendment claims against Moungey and Pawlyk.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for partial summary judgment on exhaustion grounds (ECF No. 32) is **GRANTED in part and DENIED in part**. As to Foster and Wierenga, summary judgment is **DENIED as moot.** As to Pawlyk, Meli, Puisch, and Weber, summary judgment is **GRANTED**. As to Rymarkiewicz and Nicholas, summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Meli, Puisch, and Weber are **DISMISSED without prejudice**.

---

[3] *See Chambers v. Sood*, 959 F.3d 979, 984 (7th Cir. 2020).

**IT IS FURTHER ORDERED** that the court will issue a scheduling order setting the discovery and dispositive motion deadlines at a later date.

Dated at Milwaukee, Wisconsin this 21st day of October, 2022.

BY THE COURT

_William E. Duffin_
WILLIAM E. DUFFIN
United States Magistrate Judge

19

Case 2:21-cv-00746-WED   Filed 10/21/22   Page 19 of 19   Document 59